278 So.2d 549 (1973)
Charlie SPIERS
v.
Marvin LANE, and/or Marvin Lang, et al.
No. 9338.
Court of Appeal of Louisiana, First Circuit.
May 14, 1973.
Rehearing Denied June 20, 1973.
Writs Refused August 29, 1973.
*551 George J. Kambur, Kambur & Drury, New Orleans, for appellant.
Charles M. Hughes, Talley, Anthony, Hughes & Knight, Bogalusa, for Billy Wayne Rester and Varnado Speedway, Inc.
John J. Cooper, Christovich & Kearney, New Orleans, for Interstate Fire & Cas. Co.
Robert R. Thorne, Slidell, for Pete Ellis.
Before LANDRY, TUCKER and PICKETT, JJ.
LANDRY, Judge.
Plaintiff Spiers (Appellant), a race car driver, appeals dismissal of his tort action to recover damages for injuries sustained as a result of an accident which occurred during an attempt to salvage his vehicle after it spun out and overturned during a stock car race on a track owned by defendant, Varnado Speedway, Inc. (Varnado). We affirm.
The accident occurred March 19, 1966. Plaintiff, driving his modified stock car on Varnado's oval, dirt, quarter-mile track, lost control of the racer. The automobile spun out, left the track, and came to rest on its side in a brush heap approximately 30 feet from the track. Appellant alighted from the vehicle unassisted. Numerous spectators quickly arrived at the scene and righted the vehicle on its wheels. Soon thereafter, a truck belonging to Varnado reported to the scene and attempted to pull the vehicle from the brush pile. It was then discovered that a young sapling had somehow become entangled in the car's front axle and was holding the vehicle fast. It was concluded that to forcibly pull the vehicle away would most probably damage its radiator. At about this time, Bob Lane, an officer and stockholder of Varnado, arrived on a small tractor. It was decided to disengage the sapling from the car by tying a chain to the tree and pulling the chain with the tractor. While *552 Lane was so engaged, the chain slipped from the sapling. The sapling sprung back and struck Appellant who was standing within eight to ten feet of his vehicle observing the recovery operation. Plaintiff sustained severe injuries which produced permanent ill effects.
In addition to Varnado, plaintiff named as defendants Bob (Marvin) Lane and Billy Wayne Rester, stockholders of Varnado, together with Frederick Ellis and Pete Ellis, reputed owners of the tractor involved. All defendants answered denying liability. Excepting Frederick Ellis, all defendants plead plaintiff's contributory negligence and assumption of risk, and also filed a third party demand against Interstate as insurer of Varnado and its stockholders. Third party plaintiffs also prayed for judgment against Interstate for alleged arbitrary refusal to defend on the ground that the action was not within the coverage of Interstate's policy. In addition to plaintiff's appeal, all third party plaintiffs have appealed rejection of their demands against Interstate.
The track was recently completed. Just outside the track perimeter, some trees and brush, cleared during construction, were piled along what remained a wooded area. It is not seriously disputed that the accident occurred substantially in the manner above indicated.
Appellant contends the trial court erred in failing to apply the doctrine of res ipsa loquitur, and failed to find coverage under Interstate's liability policy protecting Varnado and its officers. Third party plaintiffs urge first that the trial court erred in sustaining Interstate's plea of no coverage under the policy. Next, third party plaintiffs maintain the trial court erred in failing to award them attorney's fees for Interstate's asserted arbitrary refusal to defend the action.
In essence, plaintiff testified that when his car came to rest, he removed himself from the vehicle. He did not recall assisting in setting the car back on its wheels, but did not deny that he did so. He was certain that after Lane arrived with the tractor, he did not participate in the recovery process. He conceded an attempt was being made to "... try to get me back on the track where I could get back in the race." He recalled someone hooking a chain onto the tree, and the tree being pulled with the tractor, but could not remember anything thereafter. He stated that just before the accident, he was standing eight to ten feet from his car, and did not realize or consider himself in a place of danger. Neither did anyone warn him of possible danger. Appellant was unaware of the reason the tree sprung back as it did. He estimated that one-half hour elapsed between the time he left the track and the occurrence of his injury.
Glenn Welch, plaintiff's pit mechanic, went immediately to the scene of the accident. He confirmed that the car was being held fast by a tree, and that it was decided to pull the tree loose by means of a chain affixed to Lane's tractor. He stated he was standing about two feet from plaintiff when the accident occurred. He explained that the chain slipped from the tree. Welch did not know who tied the chain to the tree. He also stated it was the intention of those present to return the car to the track to resume the race, and that the vehicle appeared to be operable. In addition, he stated the vehicle was brought to his home from the track, and so far as he could recall, the car was operable and could have been run.
W. B. Penton, also a pit man for plaintiff, testified essentially the same as Welch excepting one or two particulars. He stated that plaintiff did assist in righting the vehicle on its wheels. He contradicted Welch in testifying that after the accident, the vehicle was inoperable in that its tie rods were bent, and it could not be steered. He acknowledged that following an accident, a vehicle can re-enter a race if it is in operable condition, but that the driver must resume the race in last place. Penton *553 noted that he was standing alongside plaintiff about 10 feet from the racer, and that he started to walk away to his left. He heard a "solid lick", turned around and saw plaintiff lying on the ground. Penton did not know who furnished the chain used in the process. Neither did he know who tied the chain to the tree and the tractor.
Lane, driver of the tractor, did not testify. He was summoned as a witness, but could not be served because he had left the state sometime prior to trial. He was reportedly living in Idaho at the time summons was attempted to be served upon him.
Interstate concedes it declined defense of this action on the ground the accident was excluded from coverage pursuant to Exclusion (a) contained in Section 2 of the policy, which excluded coverage of claims of "participants." Consequently, defendants were required to provide their own defense. Defendant Rester testified a retainer of $250.00 was paid for counsel who advised that a total fee of between $2,500.00 and $3,000.00 would be involved, depending upon the total time spent by counsel on the case.
The trial court rejected Appellant's demands upon finding that Appellant failed to establish negligence on the part of any particular individual or individuals. Alternatively, the trial court held that even though plaintiff had proved negligence on the part of some defendants, Appellant's claim would be barred by Appellant's contributory negligence in not removing himself from a position of obvious danger.
It is elementary that a plaintiff must establish every necessary element of his cause by a preponderance of evidence. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151.
The record is devoid of testimony indicating the chain was negligently attached to the sapling, or that the chain broke because it was defective, or who tied the chain to the sapling. In contending that the trial court erred in failing to find defendants negligent, Appellant's sole contention is that the doctrine of res ipsa loquitur is applicable herein.
In so contending, Appellant relies principally upon Vogt v. Hotard, La.App., 144 So.2d 714. Appellant cities Vogt, above, as holding that where an instrumentality causing injury is under the exclusive control of defendant who has peculiar knowledge as to its suitability, efficiency, condition and method of use, the occurrence of the accident gives rise to a presumption of negligence from which defendant must exculpate himself to avoid liability. Appellant analogizes Vogt by quoting extensively therefrom. Appellant argues the instant case is stronger than Vogt because plaintiff in Vogt was participating in the effort to fell the tree whereas Appellant was a mere spectator to the salvage operation.
We think Vogt is factually dissimilar to the case at bar. In Vogt, the defendant was felling a tree on his own premises. Defendant had absolute control of the entire operation. It was defendant who set the rigging and supervised every detail of the operation.
It is well settled that application of the doctrine of res ipsa loquitur is dependent upon three essential factors, all of which must be present, namely: (1) The instrument producing injury must be under the exclusive control of defendant or his agents; (2) the injury would not have occurred but for negligence in some form, and (3) the circumstances attending the accident are peculiarly within defendant's knowledge and not equally available to plaintiff. Langlinais v. Geophysical Service, Inc., 237 La. 585, 111 So.2d 781; Jones v. Shell Petroleum Corporation, 185 La. 1067, 171 So. 447.
The doctrine of res ipsa loquitur is a qualification of the general rule that negligence is never presumed, and must therefore be affirmatively established. For this reason, the principle is to be sparingly applied, and resort thereto is justified *554 only in those cases where the demands of justice make its application necessary. Day v. National U. S. Radiator Corporation, 241 La. 288, 128 So.2d 660.
In this instance, we find the requirement of exclusive control notably lacking. It is evident that numerous persons were assisting in the operation, and that no one individual or combination thereof assumed exclusive control of the recovery process. It does not appear who furnished the chain or who tied the chain to the tree in question. Nor do the circumstances indicate that the cause of the accident was peculiarly within defendants' knowledge and not equally available to Appellant. Plaintiff was present and observed the entire process; he was in equally as good position as defendants to ascertain the facts. We conclude the principle of res ipsa loquitur is inapplicable.
Section 1 of the policy defines the insurer's liability to pay claims and defend actions against the insureds. Section B thereof establishes the following obligation to defend:
"The Company will defend in the name of and on behalf of the insured any suit or other proceedings (whether groundless or not) brought against the insured in connection with an accident arising out of the insured's operations as covered by this insurance, but the Company reserves the right to settle any such suit or proceedings as it may deem expedient."
Also pertinent is the following Exclusionary clause:
"2. EXCLUSIONS.
This Policy excludes liability:
(a) to all participants, pit attendants, mechanics, stewards, and other officials and to all persons employed on or about the premises."
Appellant cites the rule that provisions of insurance contracts must be given a sensible and reasonable meaning compatible with the intent of the parties and any ambiguity therein must be resolved in favor of the insured and against the insurer who prepared the agreement. Thomas v. First National Life Insurance Company, La. App., 250 So.2d 42; Hebert v. North British and Mercantile Insurance Company, La.App., 204 So.2d 655.
Also relied on by Appellant is the rule that exclusionary clauses in insurance contracts will be construed strictly against the insurer. Berry v. Aetna Casualty and Surety Company, La.App., 240 So.2d 243.
Appellant correctly notes that an insurer seeking to avoid liability under an exclusionary clause, bears the burden of proof. Hartford Fire Insurance Co. v. Roger Wilson, Inc., La.App., 252 So.2d 161.
Conversely, Interstate urges the established principle that exclusionary clauses in insurance contracts must be given their usual and ordinary meaning, and that the rule of strict construction applicable in such cases does not permit perversion of language or the creation of ambiguity where none exists. Neither does it authorize courts to make a new contract where the language employed clearly expresses the intent of the parties. Livingston Parish School Board v. Fireman's Fund American Ins. Co., La.App., 263 So.2d 356; Spears v. The Phoenix Ins. Co., La.App., 149 So.2d 118.
We add that assuming ambiguity does exist, coverage does not necessarily follow as a matter of law. Uncertainty as to terms, either of coverage or exclusion, simply means that the most reasonable and logical interpretation under the circumstances will be adopted in favor of the insured.
In substance, Appellant contends that "participants", being not otherwise defined, must be construed to apply only to persons engaged in the active and actual conduct of automobile racing, and the risks *555 thereby intended to be excluded were solely those incident to the operation of cars at high speeds under competitive racing conditions.
Conversely, Interstate contends the term "participants" refers to a class of individuals, all of whom are excluded irrespective of the nature of the activity engaged in at the time of injury. In so arguing, Interstate cites and relies upon Richmond v. Louisiana Speedway 500, Inc., La.App., 210 So.2d 141, and Auto Racing, Inc. v. Continental Casualty Company, 10 Cir., 304 F.2d 697, both of which authorities involved interpretation of exclusionary clauses virtually identical to the one presently before us. We note that, in each instance, an employee was concerned, and the exclusionary clause was held applicable inasmuch as the employee was found to be within the scope and course of his employment at the time of injury. The import of the cited decisions is that, while the term "all persons employed on or about the premises" applies to a class, it does so only while the employees are engaged in the course of the activities for which they were employed.
Considering the clause before us, we find that the word "participant", as used therein, is not perfectly clear in meaning. However, we reject as unreasonably strict, Appellant's contention that "participants" was intended to apply only to persons engaged in the active conduct of automobile racing, and that the risks thereby excluded were solely those incident to the operation of racing cars at high speeds under competitive conditions. Such a rigid construction would not exclude a driver injured in an accident in the pit off the track while his vehicle was undergoing repair or being refueled during a race. We deem this a patently absurd application.
Equally unacceptable is Interstate's contention that "participant" excludes all members of such class irrespective of the nature of their activities when injured. A literal application of this definition would exclude one who participated in a morning race, but who was present purely as a spectator in the afternoon. This we believe also illogical, and not the intent of the contracting parties.
In employing the word "participants", we view the present exclusionary clause in question as exempting from coverage persons injured while actually taking part in a race or engaging in any activity connected with a race or constituting an element or adjunct thereof. Appellant falls in this category. His injury is directly connected with his racing activities because they occurred while he was waiting for his vehicle to be returned to the track so he could resume his participation in the race. It also appears that Appellant's vehicle was still operable and that, but for the accident, he would have rejoined the competition.
As regards Interstate's obligation to defend, we note that Appellant's petition contains the following allegations:
"II.
That on or about the 19th day of March, 1966, your petitioner was a participant in a stock car race sponsored by the defendant, Varnado Speedways, Inc. at Varnado, Louisiana, and while so engaged petitioner was involved in a mishap which resulted in petitioner's racing car being overturned among a number of felled trees located along the track.
III.
After the race was completed a wrecker owned and/or operated by the defendants and/or owned and operated by the agents and employees of the defendant, then acting within the scope and course of their employment was dispatched to the scene to attempt to right petitioner's racing car. It was discovered that a large tree branch was in the way and would have to be moved in order to return petitioner's racing car to the track.
IV.
A tractor arrived on the scene, which tractor was also owned and/or operated *556 by defendants and/or owned and operated by the agents and employees of the defendants, then acting within the scope and course of their employment, and said agents and employees fastened a length of chain to the tree branch and using one of the vehicles as a means of power, began to pull the tree branch, bending it away from the said racing car.
V.
Suddenly and without warning the chain slipped or broke from the said tree branch and the said branch swung back violently, striking petitioner in the face, head, left arm and upper part of his body, causing him severe physical injuries."
Appellant correctly notes that the insurer's obligation to defend is broader than the insurer's liability for damages. The now well settled applicable rule is that the insurer's duty to defend is determined in the light of the allegations of plaintiff's petition, and that the insurer is obliged to provide a defense unless the allegations of the petition unambiguously excludes coverage. American Home Assurance Company v. Czarniecki, 255 La. 251, 230 So.2d 253. In such instances, if, assuming the allegations of plaintiff's petition to be true, there is both coverage under the policy and liability to plaintiff, the insurer is bound to defend regardless of the outcome of the litigation. Czarniecki, above; Benoit v. Fuselier, 195 So.2d 679.
In this instance, we find that the allegations of plaintiff's petition, taken as true, unambiguously excludes and shows a lack of coverage.
Initially we note that Appellant expressly characterizes himself as a participant. The remaining pertinent allegations show conclusively that, even though plaintiff was injured after the finish of a race in which he took part, nevertheless, he was engaged in an activity directly related to and arising from his participation. Nowhere in his petition does he contend that he was other than a participant. Under the circumstances, the fact that the race was over did not remove plaintiff from the excluded category.
The judgment of the trial court is affirmed. All costs of these proceedings to be paid one-half by plaintiff-appellant and one-half by defendants, third party plaintiffs, in solido.
Affirmed.