286 So.2d 439 (1973)
Jessie WELLS, Plaintiff-Appellee,
v.
WOMAN'S HOSPITAL FOUNDATION et al., Defendant-Appellant.
No. 9510.
Court of Appeal of Louisiana, First Circuit.
November 12, 1973.
Rehearing Denied January 4, 1974.
Writ Refused February 1, 1974.
*440 Howard P. Elliott, Jr., Baton Rouge, for La. Health & Soc. & Rehab. Services Administration.
Jack P. F. Gremillion, Jr., Baton Rouge, for appellee.
Before SARTAIN, TUCKER and WATSON, JJ.
SARTAIN, Judge.
This is a suit for damages allegedly caused by the leaving of an iodoform gauze pad inside plaintiff's abdomen following treatment for an infected abdominal incision. Named as defendants in the suit were Dr. Joseph A. Farris, his liability insurer, St. Paul Fire and Marine Insurance Company, the Baton Rouge Woman's Foundation Hospital, and the State of Louisiana through the State Department of Hospitals. Plaintiff dismissed her suit as to Dr. Farris, the Baton Rouge Woman's Foundation Hospital, and St. Paul Fire and Marine Insurance Company. From an adverse judgment of the trial court which awarded plaintiff recovery in the amount of $4,500.00, the State of Louisiana through the Louisiana Health and Social and Rehabilitation Services Administration, successor to the State Department of Hospitals, has perfected this devolutive appeal.
The evidence in the record reveals that on March 12, 1970 plaintiff was operated on for a total abdominal hysterectomy at the Baton Rouge Woman's Foundation Hospital. Dr. Joseph A. Farris, plaintiff's attending physician, performed the surgery. On March 18, 1970, the day plaintiff was to be discharged from the hospital, she experienced a wound separation shortly after the sutures were removed. Dr. Farris resutured the incision and after this secondary closure plaintiff remained in the hospital until March 24, 1970. After her discharge Mrs. Wells returned to Dr. Farris on several occasions for treatment and finally removal of the stitches.
Following removal of the stitches for the second time, plaintiff moved to Pineville, Louisiana. In early July of 1970, plaintiff began to experience pain in the area of the incision and on July 6, 1970 she went to the Huey P. Long Charity Hospital in Pineville, Louisiana. She was seen by a Dr. Moore who determine that one of the stitches inside the abdomen had become infected. On July 7, 1970 plaintiff was hospitalized in Huey P. Long Charity Hospital. The incision was reopened, cleaned *441 and packed with iodoform gauze pads. The wound was repacked on July 8 and 9, 1970 and she was discharged from the hospital on July 9, 1970. On July 10, 1970 plaintiff returned to the hospital and the wound was repacked. Her final visit to Huey P. Long Charity Hospital was on July 13, 1970. Mrs. Wells testified that on this occasion Dr. Moore told her that he had unpacked the incision and that she should go home and take it easy. Although the medical records from Huey P. Long Charity Hospital indicate that she was to return to the Gynecology Clinic two weeks after her discharge, Mrs. Wells testified that no one ever told her that she was to return for further treatment after July 13, 1970. During the course of her treatment at Huey P. Long Charity Hospital the medical records indicate that Mrs. Wells was seen by several physicians on the staff of that hospital.
Plaintiff testified that she moved back to Baton Rouge around the first of August, 1970. On August 27, 1970, some six weeks after her discharge from Huey P. Long Charity Hospital, she went to Earl K. Long Charity Hospital in Baton Rouge with complaints of abdominal pain. X-rays of her abdomen were made on August 29, 1970 and these x-rays revealed the presence of some foreign body in her abdomen. On September 3, 1970 surgery was performed on plaintiff at Earl K. Long Charity Hospital by Drs. Janos Voros, Ed Mann, and Joseph A. Farris. An iodoform gauze pad was found in plaintiff's abdominal cavity and was removed from the site of her previous incision. Dr. Voros testified that this iodoform gauze pad had caused infection in the abdominal cavity which had precipitated plaintiff's complaints of pain. Plaintiff recovered from this operation and was discharged from Earl K. Long Charity Hospital on September 8, 1970.
Based on these facts the trial court found the doctrine of res ipsa loquitur applicable and imposed vicarious liability upon the State of Louisiana through the State Department of Hospitals (Hospitals) for the negligence of its physicians in leaving this iodoform gauze pad inside plaintiff's abdominal incision.
Defendant asserts on appeal that the trial court erred in applying the doctrine of res ipsa loquitur.
In order for this doctrine to be applied it must be shown that the accident is of a kind which does not normally occur in the absence of negligence, that the accident was caused by an instrumentality in the actual or constructive control of the defendant, and that the information as to the true cause of the accident is more readily available to the defendant than to the plaintiff. Haymark and Sons, Inc. v. Prendergast, 268 So.2d 110 (3rd La.App. 1972).
In holding the doctrine of res ipsa loquitur applicable to the facts of this case the judge a quo in written reasons for judgment stated:
"The fact that a sponge or gauze was left within Mrs. Wells is an event which, in the Court's opinion, does not ordinarily occur in the absence of negligence. Furthermore, the instrumentality which caused petitioner's injury was in the actual or constructive control of Hospitals. The most important point, however, is that, considering the nature of this case, the true explanation of what actually happened is more readily accessible to Hospitals than to Mrs. Wells."
In applying the doctrine the trial court also relied on certain language in the case of Grant v. Touro Infirmary, 254 La. 204, 223 So.2d 148 (1969) to the effect that a surgeon's leaving a sponge within a patient's body may be regarded as negligence per se.
Defendant contends that the trial court erred in finding that the fact that the iodoform gauze pad was left within Mrs. Wells was an event which does not ordinarily occur in the absence of negligence. Hospitals takes the position that it is a customary procedure to place such packing in a wound *442 to aid in the healing process and that the gauze pad was thus purposely placed inside Mrs. Wells. Hospitals thus argues that the leaving of this packing material in the wound is not an event which would occur only in the presence of negligence.
While it may be the customary procedure to place such gauze pads inside an infected incision, there is medical testimony in this record to the effect that it is not customary to leave such foreign materials in the body indefinitely. Dr. Janos Voros testified that it was not customary to leave an iodoform gauze pad inside a patient longer than one week. He also stated that in his opinion the presence of this foreign body in Mrs. Wells' abdomen for a period of over six weeks was the cause of the infection and accompanying pain she experienced.
It has been held that the doctrine of res ipsa loquitur has no application in malpractice cases involving no more than a failure to obtain the desired results from medical treatment. Meyer v. St. Paul-Mercury Indemnity Co., 61 So.2d 901 (Orl.La. App.1952), affirmed, 225 La. 618, 73 So.2d 781 (1953); LeMay v. General Accident Fire & Life Assurance Corporation, 228 So.2d 713 (1st La.App.1969), writ denied, 255 La. 474, 231 So.2d 393 (1970). However, where the complaint is based upon a charge that some untoward or unusual event occurred during the medical treatment application of the doctrine has been approved. McCann v. Baton Rouge General Hospital, 276 So.2d 259 (La.Sup.Ct., 1973).
In the case at bar the untoward or unusual event was not the placement of the iodoform gauze pad inside the patient but was the failure of the attending physician or physicians at Huey P. Long Charity Hospital to remove it prior to discharging the plaintiff. Therefore, we find no error in the finding made by the trial court that this was an event which does not usually occur in the absence of negligence.
Nor do we find any error in the determination made by the trial judge that the instrumentality which produced the injury was in the actual or constructive control of the defendant. The gauze pad was placed inside the wound by the hospital physicians who were in charge of the packing and unpacking of plaintiff's incision. Throughout her treatment at Huey P. Long Charity Hospital the gauze pads were in the possession of the hospital's medical staff, whose carelessness in failing to remove one of the pads resulted in plaintiff's injury. It has been recognized that the circumstance that the instrumentality which produced the injury to the hospital patient was under the control of the hospital employees supports the applicability of the doctrine of res ipsa loquitur against the hospital. Annotation, 9 ALR 3d 1315, 1327.
Likewise we agree that the information as to the true cause of this accident is more readily available to Hospitals than to Mrs. Wells. The only testimony concerning the removal of the gauze packing is that of plaintiff to the effect that she was told on July 13, 1970 that the packing had been removed and the incision was not to be repacked. This testimony stands unrefuted and thus the only other source of information to explain the presence in plaintiff's abdomen of an additional iodoform gauze pad must lie in the hands of those responsible for the medical treatment of plaintiff at the time the gauze packing was supposed to have been removed.
Therefore, we find no error on the part of the trial court in applying the doctrine of res ipsa loquitur to this case.
Once the doctrine has been applied to a given case the burden of proof shifts to the defendant to show an absence of negligence on his part. Langlinais v. Geophysical Service, Inc., 237 La. 585, 111 So. 2d 781 (1959). Hospitals has attempted to shoulder this burden by its assertion that Mrs. Wells was contributorily negligent in failing to return to the Gynecology Clinic of the Huey P. Long Charity Hospital during the time her wound was being treated with the gauze packing.
*443 The medical records of Huey P. Long Charity Hospital show that on July 9, 1970 and July 13, 1970 entries were made to the effect that plaintiff was to return for a future appointment at the Gynecology Clinic. Defendant argues that her failure to return to the clinic for this future appointment amounts to negligence on her part and should bar her recovery. We find no merit in this contention.
Other than the above mentioned notations in the medical records of Huey P. Long Charity Hospital, there is no other evidence in this record to indicate that plaintiff was to return for further treatment after July 13, 1970. The only testimony on this point is that of Mrs. Wells. Concerning what she was told on July 13, 1970 by the hospital physician, she states as follows:
"Q. What did he tell you?
A. He told me that when I went in there he told me that he had unpacked me. And I asked him was he going to pack me back. And he told me: No, that, that I could go home and he, that I could go home and take it easy. And he didn't tell me to come back or anything.
Q. Were you, do you know of any appointments you were supposed to have had with the Gynecology Clinic?
A. No, sir.
Q. Did anybody ever tell you, tell you that you had an appointment with the Gynecology Clinic?
A. No, sir.
Q. If they had told you, would you have remembered it?
A. If they would have told me I would have remembered."
Hospitals attempts to discredit this testimony by pointing out several instances where both prior to and following her treatment at Huey P. Long Charity Hospital plaintiff failed to keep medical appointments elsewhere. However, Mrs. Wells explained that on these other occasions she did not intentionally break her appointments but was forced to leave after waiting for long periods of time due to having to care for her children.
In view of the unrebutted testimony quoted above, we find no proof in this record that Mrs. Wells was contributorily negligent in failing to keep an appointment at Huey P. Long Charity Hospital after her July 13, 1970 appointment. In addition, there is no indication that had she kept this alleged appointment the gauze pad would have been discovered and removed.
Therefore, we find that defendant has not put forth sufficient evidence to show an absence of negligence on its part under the doctrine of res ipsa loquitur.
Defendant also contends that vicarious liability cannot be imposed upon it for injuries sustained by plaintiff due to the negligence of any of the physicians employed at Huey P. Long Charity Hospital. Hospitals asserts that the trial court erred in imposing such liability under the doctrine of respondeat superior.
Concerning this issue the trial judge in his written reasons for judgment stated as follows:
"Defendant further contends that the doctrine of respondeat superior does not apply to the State Department of Hospitals for the reason that the acts of the physicians were not by the command or direction of the defendant.
"The Court finds this argument to be without merit. The actual defendant is the State of Louisiana through the Department of Hospitals. The interns employed at Huey P. Long Charity Hospital are physicians serving within the State Department of Hospitals whose function it is by virtue of La.R.S. 40:2001 to administer, manage and operate certain state hospitals. Huey P. Long Charity Hospital is listed under La.R.S. 40:2002 *444 as one of the institutions which has been brought under the administration of the State Department of Hospitals. It is this State agency, therefore, which is the actual employer of the physicians. Any immediate control that the State Department of Hospitals lacks over the physicians has manifestly been delegated to each individual institution. Nevertheless, the State Department of Hospitals, and ultimately the State of Louisiana, remains the principal employer, the essence of the relationship being selection and engagement, payment of wages and power of dismissal. The only real obstacle to Mrs. Wells's suit was the traditional immunity a state enjoys as the sovereign. The State of Louisiana waived this bar, however, by virtue of House Concurrent Resolution No. 510 of 1971, which authorizes petitioner to file suit against the State of Louisiana, through the Louisiana Department of Hospitals, which resolution provided that:
`The procedure in such suit shall be the same as in suits between private litigant,'
and the defendant
`shall not be entitled to file any peremptory plea on the ground of the immunity of the State from suit or liability...'"
Broadly stated, an employer may be held liable to a third person for any injury which results from the tortious conduct of an employee while acting in the course and scope of his employment. La.C.C. Articles 2317, 2320; Vincent v. Morgan's Louisiana & T. R. & S. S. Co., 140 La. 1027, 74 So. 541 (1917); Little v. Caterpillar Tractor Company, 169 So.2d 654 (1st La. App.1964).
It is generally recognized that where a physician is the employee of a hospital sued by a patient for particular injuries negligently inflicted during the course of the patient's treatment, the hospital may be held liable for the injuries sustained by the patient under the doctrine of respondeat superior. Annotations, 69 ALR 2d 305, 310 et seq.; Annotations, 14 ALR 3d 873, 878.
Mrs. Wells sought medical treatment at Huey P. Long Charity Hospital as a qualified citizen of Louisiana. She did not consult a private physician but instead was treated by physicians who were staff-employees of Huey P. Long Charity Hospital. These physicians were hired by the state to render medical treatment to the patients of this hospital. During the course of this treatment the iodoform gauze pad was left inside plaintiff's abdomen resulting in her injury. As the employer of the physician or physicians whose treatment caused injury to this patient, the defendant is vicariously liable to plaintiff under the doctrine of respondeat superior. C.C. Articles 2317, 2320.
Defendant cites the case of Danks v. Maher, 177 So.2d 412 (4th La.App.1965) in support of its contention that a hospital is not liable for any alleged malpractice on the part of a physician resulting from the exercise of that physician's professional medical judgment in treating the patient. We find the cited case inapposite to the case at bar. In Danks, the physician was employed by the patient, not the hospital, and was only utilizing the facilities of the hospital in performing an operation on the patient. In the case at bar the patient was being treated by hospital physicians acting in the course and scope of their employment. As a result of this treatment the plaintiff was injured.
As to the amount awarded to plaintiff, defendant states in brief: "The Louisiana Department of Hospitals has no serious dispute with the trial court's holding insofar as quantum is concerned." Plaintiff has neither appealed nor answered the appeal of defendant. Our review of the medical evidence reveals no abuse of discretion in the amount awarded.
*445 Accordingly, for the above reasons, the judgment of the trial court is affirmed. Defendant-appellant is cast for all costs permitted by law.
Affirmed.