332 So.2d 506 (1976)
Francis COUSINS
v.
Dr. Royce HENRY and Travelers Insurance Company.
No. 7402.
Court of Appeal of Louisiana, Fourth Circuit.
May 18, 1976.
*507 Stephenson & Fineran, Patrick C. Kelley, New Orleans, for plaintiff-appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Steward E. Niles, Jr. and John J. Weigel, New Orleans, for defendants-appellees.
Before SAMUEL, BOUTALL and BEER, JJ.
BEER, Judge.
At first blush, the generally uncontested fundamental facts[1] of this episode give rise to a mind's eye picture of the stereotype visit to the "painless" dentist in a wild west "B" movie. For, here, we are to deal with plaintiff's claim that he suffered a broken arm occasioned in the course of a single tooth extration! Certainly, it is difficult to gainsay the proposition that a patient, seeking such professional services from his dentist, is entitled to the questionable solace of knowing that no matter how much his jaw may ache or his gums may throb, his arm will not be broken. Yet, there is much more to all of this than first meets the eye, and, so, we turn to a consideration of the factual and legal aspects of this unusual claim.
Suit was filed by plaintiff-appellant, Francis Cousins, against defendants-appellees, Dr. Royce Henry and his insurer, Travelers Insurance Company, alleging that his right arm was broken in the course of Dr. Henry's extraction of one tooth on the lower left side. The date was September 24, 1973. From a judgment in defendants' favor, Cousins devolutively appeals, urging the applicability of the doctrine of res ipsa loquitur or, alternatively, that there is sufficient evidence to warrant imposition of liability on the basis of Dr. Henry's negligence.
Cousins' claim is based upon his testimony that prior to his seeing Dr. Henry, he had no problem with his right arm, but, upon completion of the extraction, which he described as painful, his arm was broken.
He acknowledges that the site of the proposed extraction was locally anesthetized by Dr. Henry and, after a few minutes, became numb. However, he claims that he did experience some pain at the moment of the extraction and that, simultaneous with the pain of the extraction, he felt pain in his arm.
He testified that Dr. Henry apparently manipulated the extracting instrument in an upward direction until the tooth came out and that during this procedure, he had positioned his arms under the armrests of the dental chair with the palms of his hands facing upwards. At the moment of extraction, he claims to have been lifted about one inch from the chair[2] and, at that moment, felt the sharp pain in his arm.
There is no contention that Cousins was, at any time during his visit, unconscious or so heavily sedated as to be considered unconscious for all practical purposes.
Cousins could not recall if, prior to the extraction, he indicated in any way that his arm had been previously broken and that, about a month before this visit, the *508 metal corrective plate, inserted when the fracture was reduced, had been surgically removed. Hospital records indicated that Cousins had originally experienced a fracture of the radius of his right arm and that the break which is the subject of this litigation was located at one of the screw holes utilized in holding the metal plate in place following the reduction of the original fracture.
Dr. Henry testified that Cousins never mentioned his earlier broken arm until the extraction was completed and takes issue with Cousins description of the procedure followed in removing the tooth. According to Dr. Henry, the time lapse in actually removing the tooth was only a few seconds and was proceeded by a five to six minute delay simply to be sure that two injections of lidocaine had taken effect. Before commencing extraction of the diseased tooth, he tested for numbness by pricking the gums which elicited no response. He observed that throughout the entire procedure, Cousins made no complaint of pain.
Dr. Henry testified that he stood behind Cousins on the right side, with the patient's head positioned by means of a head rest. He held the extracting instrument in his right had and his left hand "extracts" the cheek, allowing access to the operative area. Tooth removal was accomplished by gripping the tooth with the extracting instrument, rotating it from side to side, and then, when loosened, extracting it sideways toward the cheek. He points out that the upward pulling procedure described by Cousins is not used because of danger of damage to the upper teeth. Not much force was necessary and he describes the entire event as a normal procedure without any particular difficulty arising in the course thereof.
Dr. Henry observed that Cousins came into his office holding his arm and proceeded to grip his right wrist with the left hand throughout the extraction procedure. At no time during the preparation for or at the moment of extraction did Dr. Henry touch Cousins' right arm.
While he noted that Cousins' positioning of his hands and arms was somewhat unusual, Dr. Henry felt that this was merely a reaction to the mental reservations which predictably occur in some cases involving extraction. Moreover, he testified that during this procedure, he exercised no control over the movement of Cousins' body, other than with respect to his head and mouth.
Dr. Henry described the extraction method as following the general procedure he has used throughout his thirty-two year career.
The only other witness was a friend of Cousins, Roger Terrio, who had accompanied him to Dr. Henry's office. He did not observe the extraction. He stated Cousins had made no complaints of difficulty with his arm prior to the visit. While waiting in the waiting room, he recalls hearing "a hurting sound" emanate from the room where Cousins was being treated.
Res ipsa loquitur should be sparingly applied by courts and resort thereto will be justified only in those cases where demands of justice make its application necessary. Spiers v. Lane, 278 So.2d 549 (La.App. 1st Cir., 1973); Day v. National U.S. Radiator Corporation, 241 La. 288, 128 So.2d 660 (La.1961). Moreover, this doctrine does not apply to an accident when the facts are such that one could reasonably infer that it was due to some cause other than defendant's negligence. Taylor v. CNA Insurance Group, 300 So.2d 479 (La.1974). Thus, "when it is shown that the accident might have happened as the result of one of two causes, the reason for the rule fails and it cannot be invoked." Larkin v. State Farm Mutual Automobile Insurance Company, 233 La. 544, 97 So.2d 389 (La.1957). The doctrine will be applied only "when the facts shown suggest the negligence of the defendant as the *509 most plausible explanation of the injury." McCann v. Baton Rouge General Hospital, 276 So.2d 259 (La. 1973); King v. King, 253 La. 270, 217 So.2d 395 (La.1968).
Here, the trial court was confronted with conflicting versions of what took place: either Cousins had his arms positioned under the armrest and, upon being jerked upward, broke his weakened arm, or Cousins, himself, grasped or extended his arm in some way that caused it to be rebroken during the course of the extraction.
Res ipsa is "irrelevant when a body of direct evidence is available explaining the activity leading to the injury." McCann, supra. Furthermore, conflicting testimony concerning the whole procedure was offered by the two litigating parties, and res ipsa will not apply if "an inference that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as one that it was due to his negligence." Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (La.1972). In Wells v. Women's Hospital Foundation, 286 So.2d 439 (La.App.1st Cir., 1973), the court clearly indicated that one essential element necessary for the application of the doctrine was that "the information as to the true cause of the accident is more readily available to the defendant than to the plaintiff." Here, the plaintiff had a greater opportunity than the defendant to know what, in fact, occurred, since he, alone, was privy to the information about the recent removal of the plate. In both Wells and McCann, injuries to the plaintiff occurred while the plaintiff was sedated and unaware of what was done. Such is not the case here. We find no error in the apparent rejection of the applicability of res ipsa by the trial court.
Likewise, we find no manifest error in the trial court's apparent resolution of the conflicting testimony of the litigants nor in the ultimate conclusion reached with respect to liability. See Canter v. Koehring, 283 So.2d 716 (La., 1973). No testimony or evidence of any kind was introduced to support the contention that Dr. Henry was under a duty to demonstrate to Cousins some foolproof way to position his arms prior to the commencement of the extraction.
Accordingly, the judgment of the Civil District Court for the Parish of Orleans is affirmed. Costs of this appeal are to be paid by appellant.
AFFIRMED.
NOTES
[1] There are, indeed, factual issues existent in this case. But there is no dispute about the basic happening.
[2] Cousins, by his own testimony, weighs 266 pounds.