SCHOTT, Judge.
Plaintiffs, the children and legal heirs of Louis P. Davis, Jr., the original plaintiff who died on September 15, 1971, appeal from a judgment based upon a unanimous jury verdict dismissing their claim against all defendants.
Defendants include Southern Baptist Hospital and Francis Everett Brander, individually and as representative of certain underwriters at Lloyds, subscribing to a certificate of insurance issued to the hospital, Commercial Union Insurance Company of New York, another insurer of the hospital, and Drs. Charles W. Pearce and White E. Gibson, III, and their insurer, St. Paul Fire & Marine Insurance Company. The suit was originally filed also against Dr. Charles Brown, Jr. and F. Ritter & Company but was voluntarily dismissed as against them by plaintiffs before trial.
Decedent Davis was afflicted with a serious heart condition and was referred by his regular treating physician, Dr. Brown, to Drs. Pearce and Gibson for open heart surgery. He was admitted to the Baptist Hospital on August 31, 1969, and the surgery was performed on September 10 by Dr. Pearce with assistance from Dr. Gibson. Also participating were a physician- *239 anesthesiologist, one or more surgical nurses who were scrubbed and worked in the sterile field, and one or two circulating nurses who worked outside of the sterile field. Utilized during the operation was a Bovie machine, which enables the surgeon to seal off small blood vessels during the procedure by means of the electrocoagu-lation. The apparatus consists of an electrically powered console located outside of the sterile field and principally operated and monitored by a circulating nurse. To the console are connected leads, one to a contact which is applied by the surgeon to hemostats on small blood vessels, another leading to a foot pedal which is used by the surgeon in order to activate the Bovie as needed,- and another leading to a plate which is placed under the patient on the operating table and serves as a ground for the electric current. The patient’s skin is coated with a conductive jelly and the plate is positioned in such a way that the weight of the patient’s body presses firmly upon the plate so as to achieve maximum contact. This Bovie machine was' the property of the hospital and was the hospital’s responsiblity as far as maintenance and upkeep were concerned. The nurses were employees of the hospital.
On the second day after the operation, while decedent was in the recovery room, a lesion was discovered on his back" which Dr. Pearce described as having a dull flesh color, lifeless in appearance at the center and surrounded by a small zone of reddened skin.
Decedent was treated for this condition in conjunction with post operative care by Drs. Pearce and Gibson until February when he was referred to Dr. Louis Krust, a plastic surgeon, for further treatment of the lesion on his back. He remained' in the care of Dr. Krust until the date of his death in September, 1971. When Dr. Krust first saw the lesion he described it as a “one-and-three-quarter inch by four-inch leathery eschar on the mid back at the level of the eighth to tenth thoracic vertebral spine.” He defined an eschar as a leathery area of dead skin and said that decedent had a mild kyphosis or angulation in his back at the site of the eschar which would tend to increase pressure at the site during surgery.
Plaintiffs’ suit for damages was for decedent’s physical and mental anguish, pain, suffering and inconvenience caused by the lesion on his back until his death, but his death is not alleged to be the result of or related to the injury. The principal errors specified by plaintiffs are that the doctrine of res ipsa loquitur, though applicable on the basis of the law and the evidence, was not applied and as a result defendants were not found liable.
It should be noted at the outset of this discussion that decedent was the beneficiary of a highly successful surgical procedure at the hands of Drs. Pearce and Gibson which undoubtedly prolonged his life. One cannot help but be highly impressed with the skill of these surgeons in performing an operation which consisted of an incision at the groin area so as to expose the large artery and connect it with an artificial heart-lung apparatus for use during the operation, and a second incision from the top of the chest down to the umbilicus with a division of the breast bone and spreading it apart from four to six inches so as to expose the front surface of the heart. During the operation the heart was actually stopped while the patient was dependent on the heart-lung machine. Thereafter the surgeon opened the large aorta, exposed the aortic valve and accomplished its removal and replacement by an artificial valve selected for size and fixed into position by the surgeon. Thereafter the heart was closed, the aortic valve above the heart was allowed to fill with blood and in due course the heart was restarted and the heart-lung machine disconnected. Any words we might use to paraphrase the doctor’s description of the intricate procedures he employed would be grossly inadequate to emphasize the seri *240 ousness and complexity of such procedures. In answer to a question as to whether the operation was a success, Dr. Pearce said:
“I was extremely pleased the way the operation had gone along and the way the patient’s own heart action had been restored and came back so promptly, the fact that we were able to remove all of the diseased valve and including nearly all of the calcium that is at the root of it and to place in its place a prosthesis of good size that should serve and function well in the months and years ahead.”
In the light of these facts it might seem practical to dispose of this case on the theory that the decedent paid a small price in exchange for his life which was clearly in jeopardy and which was undoubtedly prolonged as a result of the services performed by defendants. As Dr. Pearce put it, “I think it’s probably comparable to having your knee skint when you are dragged up on the beach after drowning, a small price to pay for being saved.”
But while this might seem to be a sound practical approach to the problem and while it may very well have been the approach of the jury, plaintiffs are entitled to a disposition of their case in accordance with the law and regardless of the good that flowed to decedent as a result of defendants’ efforts if decedent suffered a substantial injury as a result of defendants’ negligence his survivors are entitled to be compensated for his damages.
Plaintiffs contend that decedent’s injury was a burn from the Bovie machine plate; that he was rendered unconscious and was wholly within the care and control of defendants when the injury occurred; that under these circumstances the doctrine of res ipsa loquitur applies and upon his proof of this untoward incident having occurred the burden of proof shifted to defendants to show that they were free from negligence; that defendants failed to carry their burden of proof; and that plaintiffs are therefore entitled to recover.
Defendants-physicians and their insurers take the position they offered sufficient proof to show that they followed the standard of care customarily used in the community and that they are thereby relieved of negligence. They join with the defendant hospital and its insurers in contending that the doctrine of res ipsa loqui-tur doesn’t apply to the facts of this case because the evidence shows only that at some point between the time before and forty-eight hours after the surgery the lesion was discovered on decedent’s back and that decedent was not under the exclusive control of defendants during this period of time. All defendants also contend that the case was decided by the jury on questions of fact and that such fact findings should not be disturbed by this Court, there being no manifest error.
Shortly after the operation on October 17, 1969, Dr. Pearce reported to Dr. Brown as follows:
“Mr. Davis’ postoperative course was moderately smooth, being complicated only by some pulmonary atelectasis and some trouble with premature contractions in the postoperative period. In addition you are, of course, aware of the fact that he had a burned area on the back of his thorax which was presumably secondary to poor contact with a Bovie plate during the time of operation.”
Thus, his initial opinion was that the injury sustained by the decedent was a Bovie burn. However, at the trial Dr. Pearce said that it was also reasonable to presume that the lesion or wound was a pressure sore, especially considering the fact that decedent had an unusual curvature of his back in the area where the lesion appeared. Dr. Pearce said that he had never had one of his own patients develop such a pressure sore but that he had heard of surgical patients doing so “particularly in prolonged operations.” He explained that decedent’s operation lasted for two hours and thirty- *241 five minutes, thereafter he was placed on an operating table for IS or 20 minutes, and thereafter he was kept in a prone position for another 24 hours. Dr. Pearce stated that within a reasonable degree of medical certainty, the condition found in this patient could be attributed to a pressure sore. He said, “It’s one of a very strong and shall we say very definite possibility as to the cause of this sore.” He testified that he had used the Bovie machine in operations some three thousand times and never had a patient suffer a burn although he had heard of such instances being reported in medical literature. His testimony was supported by that of the circulating nurse who operated the Bovie machine at the time of decedent’s operation and who testified that she had used the machine a thousand times and never had such a problem.
It was stipulated that Dr. Gibson’s'testimony would be identical to Dr. Pearce’s.
Plaintiffs’ witness, Dr. Krust, first testified that in his identification of or explanation for the wound he “would tend to lean toward a Bovie burn rather than pressure or necrosis.” He defined necrosis as a dying of the skin at a specific site. But he later qualified his opinion with the statement that the cause was due to either a burn or pressure and he would not state equivocally that it had to be one or the other.
It seems that plaintiffs have approached their problem of proof with two alternatives. On the one hand, they take the position that when decedent was injured he was unconscious in the operating room under the exclusive control and dominion of defendants, that the exact instrumentality or individual who caused the injury is beyond the knowledge of decedent and under the doctrine of res ipsa loquitur the burden of proof is on the defendants to explain what happened and to negate negligence on their part. ’On the other hand, plaintiffs have sought to prove that the instrumentality which caused decedent’s injury was the Bovie machine and the doctrine of res ipsa loquitur applies so as to require that defendants prove that they were not negligent in permitting the machine to do injury to decedent.
The first alternative above seems to invoke the holdings of McCann v. Baton Rouge General Hospital, 276 So.2d 259 (Sup.Ct.1973), and Jacobs v. Beck, 141 So.2d 920 (La.App. 4th Cir. 1962). In the McCann case the allegation was made that the patient was subjected to surgery on his elbow and following the operation a large lesion was discovered on the patient’s left thigh. It was further alleged that the patient’s injuries resulted from acts of negligence committed by the hospital’s employees and the physician, “details of which acts are peculiarly within the knowledge and control of the defendants.” Reversing the trial court and the Court of Appeal, the Supreme Court found that the petition did state a cause of action under the res ipsa loquitur rule. The Court held that “the rule applies when the facts shown suggest the negligence of the defendant as the most plausible explanation of the injury.” And further:
“When, as here, the injury occurred within the confines of the special service rooms at the hospital, the failure to allege the specific acts of the defendant producing the injury cannot vitiate the cause of action. The surrounding circumstances are peculiarly within the knowledge of the defendants or their employees and unavailable to plaintiff.”
Similarly in the Jacobs case this Court was confronted with a summary judgment in favor of a hospital and its insurer where it was alleged that while plaintiff was undergoing abdominal surgery under a general anesthetic and under the complete control of the physicians and employees of the hospital she suffered two broken upper teeth. This Court held:
“An injury of the type here involved normally does not occur in the absence *242 of negligence, and the allegations reveal that an explanation of what actually-happened was within the knowledge of the defendants alone and could not have been within the knowledge of plaintiff. The doctrine of res ipsa loquitur is applicable.”
A similar approach has been taken in other jurisdictions under the circumstances. For instance, in West Coast Hospital Ass’n v. Webb, 52 So.2d 803 (Sup.Ct.Fla.1951), plaintiff during a diabetic coma complicated by pneumonia, suffered serious burns while she was unconscious in the defendant hospital. In affirming a judgment in favor of the plaintiff and applying the doctrine of res ipsa loquitur the Court held:
“We think the circumstances justify an inference that, while unconscious in a domain strictly appellant’s appellee was burned by some instrumentality which was negligently used or which should not have been used at all; that the doctrine was properly invoked and, having been, the jury was warranted in fixing the responsibility on appellant.”
In Pliss v. 83rd Foundation, City Ct., 69 N.Y.S.2d 727, the Court considered evidence that plaintiff submitted to a surgical operation which was successfully performed but upon her recovering consciousness she discovered that she had been severely burned on the back in an area disconnected from that part of her anatomy where the operation was performed. There was no explanation of how the, injuries occurred although the surgeon testified that it was “possible” that the burns were caused by a coagulating electrode used in the operation. In ordering a new trial, the Court held:
“Whether the hospital will be liable depends upon its explanation at a new trial of the manner in which the injuries occurred and the conduct of its servants.”
In Frost v. Des Moines Still College of Osteo. & Surg., 248 Iowa 294, 79 N.W.2d 306, plaintiff was subjected to a back operation and upon regaining consciousness she discovered burns on her abdomen. The Court in affirming the judgment in plaintiff’s favor noted that she had placed herself in the care and custody of the physicians and hospital employees, and from the time she. became unconscious until she regained her consciousness she did not know what instrumentalities were used or how she was injured but the Court was satisfied that the injury was the type which ordinarily does not occur in the absence of someone’s negligence. While the physician advanced several possible explanations for the injury no one testified that anything in particular was the cause or who had been responsible.
Finally, in Oldis v. La Societe Francaise de Bienfaisance Mut., 130 Cal.App.2d 461, 279 P.2d 184 (1955) the doctrine of res ipsa loquitur was applied and a judgment in favor of the plaintiff affirmed under circumstances where plaintiff went to surgery on November 6, returned therefrom shortly after noon of that day, and on November 9 about 10:00 A.M. a burn was discovered on his abdomen. The Court concluded that two possible explanations as to the cause of the burn were offered but neither of them was found satisfactory by the trial court. One of the possible explanations was a burn from a Bovie machine plate, similar to the one used in the instant case. Concluding that it was not established as a matter of law that the Bovie unit was instrumental in causing the burn or that the administration of hot applications was the cause of the burn, the Court concluded:
“It is apparent that the trial court impliedly found that the defendants did not come forward with a satisfactory showing as to the cause of the burn. Nor can we, as a reviewing court, find that they did. Accordingly, the judgment must be affirmed.”
In the instant case the defendants came forward with two possible explanations for the injury sustained by plaintiff which, *243 based upon the unanimous testimony of the physicians at the trial, were equally plausible, i. e., that plaintiff’s injury was a Bovie burn or a pressure sore. We perceive from the foregoing cases that the doctrine of res ipsa loquitur has not been satisfactorily invoked under these circumstances because if plaintiff’s injury was due to a pressure sore then the matter "is outside the realm of negligence since the physicians testified that a pressure sore is a surgical phenomenon resulting from a combination of the curvature and makeup of plaintiff’s anatomy and the natural pressure of his body on a flat surface such as the Bovie plate or the operating table.
At the conclusion of this case the judge instructed the jury as to the doctrine of res ipsa loquitur stating that it is a rule of evidence applied in those cases where a plaintiff cannot be expected to know the cause of an accident whereas the defendant is fully informed on the subject and where an accident is of a kind which ordinarily does not occur when due care has been exercised. The Court said: ...
“The rule of evidence is that the accident speaks for itself and that a presumption of negligence arises from the accident itself. In such cases the plaintiff needs not allege the particular act of negligence which caused the alleged injury but the burden is on the defendant to show absence of negligence. The doctrine is an exception from the general rule that the plaintiff who claims damages must allege and prove the facts necessary to establish the negligence of a defendant.”
The jury was given the case on a number of special interrogatories beginning with three separate interrogatories “Do you find” Dr. Pearce, Dr. Gibson, or any employee of Southern Baptist was negligent, and in answer to each question the jury replied no. We can only speculate as to what thought process was followed by the jurors in arriving at these answers, but since they were given the instruction on res ipsa loquitur it seems clear that they concluded no negligence on the part of the two physicians and the hospital’s employees because they were satisfied that plaintiff’s injury might have been a pressure sore and that such was not the result of any negligence on the part of any of the defendants. We cannot say that there is any manifest error in this factual determination.
The paramount distinction between the instant case and those cited above where plaintiff prevailed is that the triers of facts in the cited cases found for the plaintiffs whereas in the instant case the jury found for the defendant on the facts, and we are consistent with the Courts in the cited cases in refusing to disturb those factual determinations.
The other alternative approach by plaintiffs to the case was an attempt to prove that decedent was injured from the Bovie machine and thereby to bring the case under the theory of Meyer v. St. Paul-Mercury Indemnity Co., 225 La. 618, 73 So.2d 781, and Andrepont v. Ochsner, 84 So.2d 63 (La.App.Orl.1955). In both, the cause of plaintiff’s injury was apparent from the facts and the defendants attempted to absolve themselves from negligence with respect to the particular cause of plaintiff’s injury. In Meyer during an operation plaintiff’s tooth was dislodged by a surgical instrument, a laryngoscope, and became lodged in plaintiff’s lung. The Court was satisfied that the defendants had exercised the requisite degree of care and plaintiff’s injury was due to an unavoidable accident. On the other hand, in the Andrepont case, where the Court was satisfied that plaintiff was injured during an operation as a result of an explosion of anesthesia from static electricity, the hospital employees were found negligent because of their failure to take satisfactory measures to reduce or eliminate such static electricity.
In the instant case, had plaintiffs proved by a preponderance of the evidence that decedent’s injury was in fact a Bovie burn the burden would have been squarely on the hospital to negate negligence on their part in the maintenance and use of the ma *244 chine. The record does not contain any competent evidence as to the mechanical condition of the machine and one may speculate that something, such as a short circuit, developed causing the plate to become heated during the operation. But plaintiffs never reached that point with their evidence because such does not support the conclusion that it was more probable that plaintiff’s injury was a Bovie burn than a pressure sore. If we were permitted to speculate that the jury concluded that plaintiff’s injury was a Bovie burn, we could conclude that there is error in the record since there is no showing that the hospital’s employees were not negligent in connection with the machine’s condition, but considering all the evidence and the instructions given to the jury we must conclude that they did not find as a fact that plaintiff’s injury was a Bovie burn and we cannot say that this finding was manifestly erroneous.
For the foregoing reasons, the judgment appealed from is affirmed.
Affirmed.