317 So.2d 270 (1975)
William R. DRUILHET, Individually, et ux., Plaintiffs-Appellants,
v.
Dr. Paul COMEAUX et al., Defendants-Appellees.
No. 5081.
Court of Appeal of Louisiana, Third Circuit.
July 30, 1975.
Rehearing Denied August 28, 1975.
*271 Raleigh Newman, Lake Charles, for plaintiffs-appellants.
Raggio, Farrar, Cappel & Chozen, by R. W. Farrar, Jr., Lake Charles, for defendants-appellees.
Before FRUGE, DOMENGEAUX and WATSON, JJ.
DOMENGEAUX, Judge.
This is a malpractice suit by the plaintiff-husband, individually and as head and master of the community, and his wife, for damages allegedly sustained as a result of a sponge or other foreign object being left internally in the plaintiff-wife during childbirth. Defendants in the suit are Dr. Paul Comeaux (the physician who delivered plaintiff-wife's child); Sorkow, Shorts, and Comeaux, Drs., Ltd. (the professional medical corporation of which Doctor Comeaux is a member); Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Hospital; and St. Paul Fire & Marine Insurance Company (malpractice insurer for the defendants). From a jury verdict in favor of the defendants, the plaintiffs have appealed.
The plaintiff, Mary Ellen Druilhet, gave normal birth to her third child on September 7, 1971, in Lake Charles Memorial Hospital. The attending physician was Dr. Paul Comeaux, a general practitioner. *272 Subsequent to birth the plaintiff returned to Doctor Comeaux for routine three and six week examinations.
A pelvic examination was subsequently performed by Dr. Eli Sorkow (a general practitioner and member of the medical corporation of which Doctor Comeaux was attached) on October 28, 1971. On this occasion the doctor removed from the entrance of plaintiff's vagina what he opined to be a surgical sponge (a 4 × 4 inch folded piece of sterilized gauze).
Subsequently the plaintiff-wife was seen on December 7, 1971, by Dr. James T. Austin, Jr., a local obstetrician and gynecologist, complaining of abdominal and vaginal pain. Mrs. Druilhet was treated by Doctor Austin for the following nine-month period. She was also experiencing extreme nervousness during this time and after prescribed medication failed to alleviate her trouble, she was referred to the local mental health center. Doctor Austin finally advised the plaintiff that she should have a hysterectomy operation because of her continued severe pain. Said operation was performed on August 2, 1972.
This suit was filed on September 6, 1972, alleging that the defendants were responsible for severe complications following childbirth as a result of the sponge or foreign object being left in her vagina and/or womb. It was contended that in addition to sustained pain and suffering the object caused infection in her vagina and/or womb, the occurrence of a tumor, and finally, the hysterectomy. Plaintiff-husband sought medical expenses and damages for the loss of normal marital relations, as well as the fact that the couple could have no more children.
A jury trial was also requested in plaintiffs' initial petition. Subsequently, during the voir dire of prospective jurors plaintiffs' counsel was prevented from asking the jurors as to whether or not they would accept the law as to the doctrine of res ipsa loquitur, specifically. The court denied same on the basis that questions relating to the judge's charges are not the proper subject for voir dire, the purpose being to determine whether or not any partiality exists on the part of the jurors.
Following trial, counsel for the plaintiffs and defendants presented closing arguments to the jury and the district judge gave instructions to the jury as to the laws applicable and the form of the verdict. Said charge included the doctrine of res ipsa loquitur and no objections were made to the charge.
The jury returned its special verdict indicating the actions of the defendants did not constitute negligence which was the proximate cause of plaintiff-wife's alleged injuries. Plaintiffs subsequently applied for a new trial which was also denied.
The following issues are raised on this appeal: (1) Whether one or more of the defendants were negligent? (2) If so, whether such negligence was a cause in fact of the injuries complained of? (3) Whether counsel for the plaintiffs should have been allowed to question the jurors on voir dire regarding the doctrine of res ipsa loquitur, and (4) Whether plaintiffs should have been granted a new trial?
The first issue we will consider is the alleged negligence of the defendants.
The record clearly shows that a foreign object was removed from plaintiff-wife's vaginal tract on October 28, 1971, by Dr. Eli Sorkow. Although the object in question was immediately disposed of and testimony reflects it "could have been" a Tampax, cotton, etc., Doctor Sorkow explicitly stated that in his opinion the object removed was a surgical sponge. His testimony is not refuted. The evidence further preponderates to the effect that the sponge was left internally in Mrs. Druilhet's vaginal *273 tract[1] during the hospital delivery of her child.
Although there was testimony to the effect that sponges are left internally in patients for an extended period on occasion by physicians who practice obstetrics, the same testimony confirmed that such was unintentional and not supposed to occur. Thus it must be said that when such an occurrence takes place the responsible physician has not exercised the standard of care normally practiced under similar circumstances by members of his profession in good standing in the same locality.
Failure to remove the sponge from plaintiff's vaginal tract immediately following delivery was an untoward or unusual event such as to bring into application the doctrine of res ipsa loquitur. See: Wells v. Woman's Hospital Foundation, 286 So.2d 439 (La.App. 1st Cir. 1973), writ denied, 288 So.2d 646 (La.1974).
Therefore the burden of proof shifted to the defendant(s) to prove lack of negligence. Doctor Comeaux was the attending physician during plaintiff-wife's childbirth and as a result was responsible for overseeing the procedures in the delivery room. No real contention is made by the plaintiffs that anyone other than Doctor Comeaux was the party who left the sponge inside the plaintiff-wife. The doctor testified essentially that he could not recall the particular delivery and did not believe he left the sponge, but could not deny that he might have done so. Under the foregoing facts, we conclude that the doctor failed to sustain the burden of showing his freedom from negligence.
As in any other tort action, however, such negligence must be shown to have a causal relationship to the injuries complained of by the plaintiff. See Margiotta v. Trachtman, 310 So.2d 151 (La. App.4th Cir. 1975); Davis v. Southern Baptist Hospital, 293 So.2d 238 (La.App. 4th Cir. 1974). The jury found causality lacking and we agree.
In this regard, we turn first to the testimony of Mrs. Druilhet, who stated essentially: that prior to her last child being born she had not experienced female problems; that immediately following her return home from the hospital she began to have pains continuously; that she complained of pain to Doctor Comeaux at both the three-week and six-week examinations; and that on the date when Doctor Sorkow removed the foreign object she experienced pain during the removal thereof and additionally complained of pain to the doctor. She further contended that about three weeks following delivery she had a "falling" sensation in the area of her female organs and called Doctor Comeaux to inform him of same. The doctor allegedly told the plaintiff that he thought her womb had fallen, for her to go to bed and place her legs in the air, and that if the womb did not go back into place an operation would have to be performed. Plaintiff-wife further testified that she continued to have pain throughout her visits to Doctor Austin and on one occasion inquired from the doctor if the sponge could have had something to do with her condition. Allegedly the doctor replied in the affirmative.
The foregoing testimony of Mrs. Druilhet is, however, contradicted throughout the record.
The plaintiff had been a long-time patient of Drs. Sorkow, Shorts, and Comeaux. In March of 1968 she had complaints of pain in the vagina and of bloody discharges. In December of 1968 she complained of irregular menstrual periods, nausea, and nervousness.
*274 Doctor Comeaux made no notation of any complaints of pain by the plaintiff upon her three and six week examinations. The doctor did not recall the conversation regarding the "falling womb".
Doctor Sorkow testified that he made no notation of pelvic pain at the time he removed the sponge from the plaintiff and indicated in all probability he would have noted it, had it been present. He further opined that the sponge had no adverse effects on the plaintiff and no bearing upon plaintiff's subsequent hysterectomy. The doctor compared the sponge to Tampax and noted that a number of his patients had left Tampax in their vaginal area for a three or four month period without any damage, the only effect being a feeling of "fullness" and foul smelling discharge.
Dr. James Austin testified that upon initial examination plaintiff told him she had been having sharp lower abdominal and vaginal pains since her child was seven weeks old. He also testified that when asked if the sponge had any correlation to her pains he replied in the negative. Doctor Austin further opined that plaintiff's pains were possibly caused from degeneration of a small fibroid tumor in her uterus following pregnancy, which was a very common condition (although no tumor was found when the hysterectomy operation was performed) or inflammation and infection of fallopian tubes. He further opined that the sponge had no causal relationship with the suspected tumor or any uterine infection. In addition he stated that plaintiff-wife had a uterine prolapse which could have caused the pelvic pains but that such was likewise not associated with the sponge. The doctor stated in conclusion that the hysterectomy was performed because of severe pain and that the pain was in no way connected with the aforementioned sponge.
Dr. Avery L. Cook, a pathologist, testified that in his examination of a uterine tissue specimen from Mrs. Druilhet he found no evidence to indicate a foreign body had been in the uterus, or caused an infection, and that the uterus had no infection in it for a seven or eight month period before.
Doctor George W. Tucker, a gynecologist associated with Doctor Austin, testified that pelvic pain following childbirth is common and often caused by uterine prolapse. In addition he indicated nervousness can also cause such pelvic pain. He felt very strongly, that the sponge in the vagina would not have produced plaintiff's symptoms nor caused the subsequent hysterectomy. He also indicated that on occasion Tampax had been left in a patient for a number of weeks without any damage.
No expert testimony was introduced to refute the foregoing evidence. As a result we cannot say the jury erred in concluding that the actions of the defendants did not constitute negligence which was the proximate cause of plaintiff-wife's alleged injuries. Although failure to remove the sponge was negligence, the evidence simply does not show that plaintiff sustained any damage as a result of same.
Plaintiffs also specify as error the refusal of the trial judge to allow their counsel to question the prospective jurors on voir dire regarding the doctrine of res ipsa loquitur.
Although it is possible[2] the trial judge might have been in error in refusing to allow plaintiffs' desired scope of voir dire, no harmful or prejudicial effect occurred in light of our holding that no causal relationship was established between any negligence on the part of the defendant(s) and plaintiffs' alleged injuries.
*275 The last issue raised is the denial of plaintiffs' motion for a new trial.
Peremptory grounds for granting a new trial in a jury case are present if it be proven the jury was bribed or behaved improperly so that impartial justice has not been done. LSA-C.C.P. Art. 1814. Otherwise, the trial judge is granted wide discretion in allowing or denying the motion. LSA-C.C.P. Art. 1973.
In this regard plaintiffs offered affidavits of two parties (including one juror) attempting to show the juror(s) did not understand the instructions given by the trial judge on the burden of proof in the case and felt bound by an alleged instruction to the effect that plaintiff had to show how the foreign object came to be in her body.
After review of the charges given to the jury at the close of the trial we find same to be clear and concise statements of the legal principles involved. Nowhere do we find the abovementioned instruction allegedly followed by member(s) of the jury.
Assuming, however, some confusion existed among the jurors regarding the burden of proof, there is simply no evidence supporting an inference that more than one juror was confused. Only nine of the twelve need concur (LSA-C.C.P. Art. 1795). The jury had adequate opportunity to request further application of any charges, yet sought none.
Nevertheless failure of either party to object to the charges resulted in a waiver of any alleged defects therein. LSA-C.C.P. Art. 1793, Renz v. Texas & Pacific Railway Co., 138 So.2d 114 (La. App.3rd Cir. 1962).
Our courts have also expressed the view in civil cases that even assuming errors in the jury charge we have the constitutional duty to review the entire record and if we find that same supports the judgment we should affirm the case rather than remand it, thereby causing undue delay and expenses. Bartholomew v. Travelers Insurance Co., 290 So.2d 390 (La.App. 4th Cir. 1974); Bryant v. St. Paul Fire & Marine Insurance Co., 272 So.2d 448 (La. App.2nd Cir. 1973).
As pointed out in Thibeaux v. State Farm Mutual Automobile Ins. Co., 285 So. ed 363, 366 (La.App.3rd Cir. 1973):
"This court is not disposed to interfere with the deliberations and determinations of juries when conducted under such circumstances that it can be safely assumed that impartial justice was achieved . . To enter the confidential sphere or realm of the jury in the instant case, would be to disturb the jury system as we know it. It would ultimately result in an unnecessary and destructive disruption of jury findings in future cases."
We do not find proof herein of misconduct such as to preclude the impartial administration of justice and as a result conclude that the judge was well within his discretion in denying the motion for a new trial.
For the above and foregoing reasons the judgment of the trial court is affirmed at plaintiff-appellants' costs.
Affirmed.
WATSON, J., concurs and assigns written reasons.
WATSON, Judge (concurring):
I concur in the result reached by the majority, but I differ as to the reasons for affirming the jury verdict. I would not hold Dr. Comeaux negligent; in fact, I would not even reach that question.
My basic difference with the majority opinion is in the approach to the problem presented. The first and basic inquiry should be into causation. Was the alleged act or omission of the defendant doctor a cause in fact of the plaintiff-wife's injury? Since, according to the evidence, the alleged conduct did not result in injury to the plaintiff-wife, *276 it is not necessary to consider whether the doctor was negligent.
I do not believe the res ipsa loquitur doctrine (the thing speaks for itself) is applicable to the instant case. In certain types of malpractice actions, res ipsa loquitur is an appropriate legal doctrine, but not in all, and not, in my opinion, here.
"Before the rule of res ipsa loquitur can be applied, it must be possible to say, first, that it is more probable than not that the injury was caused by someone's negligence, . . ." 58 Am.Jur.2d Sec. 480, pg. 55.
"It is . . . axiomatic that the plaintiff must satisfy the trier that a causal connection exists between the defendant's negligence and the injury." Studies in Louisiana Torts Law, Wex S. Malone and Leah Guerry, page 220.
"The rule [of res ipsa loquitur] applies when the facts shown suggest the negligence of the defendant as the most plausible explanation of the injury." McCann v. Baton Rouge General Hospital, 276 So.2d 259 at 261 (La.1973).
The prerequisites of the doctrine of res ipsa loquitur do not exist here, and the doctrine is inapplicable.
I am convinced that a surgical sponge left at the entrance to plaintiff-wife's vagina is not analogous to a surgical sponge inside a surgically closed incision as in the Wells v. Woman's Hospital Foundation, 286 So.2d 439 (La.App. 1 Cir. 1973); writ denied, La., 288 So.2d 646, case. The jury concluded that Dr. Comeaux was not guilty of negligence which was "a proximate cause" of the alleged injuries, that being the terminology submitted to them on the form for their verdict by the trial court. The jury may well have concluded that plaintiff failed to prove causation in fact. They may well have been impressed with and accepted the testimony of Dr. Tucker.
Dr. George William Tucker, an American Board certified obstetrician and gynecologist, testified that he was not aware of a reported instance in his twenty years of reading medical literature where a sponge left in the vagina caused serious complications. He stated that there is no sponge count after childbirth, as there is after surgery, because sponges left in the vagina, a not infrequent occurrence, are not a hazard to patients. This evidence was uncontradicted.
In my opinion, if plaintiff failed to prove causation in fact, then the question of whether Dr. Comeaux was negligent never arises. I disagree with the majority's conclusion that he was negligent and that he had the burden of proof in this connection.
In any event, this was a jury trial in which plaintiff failed to convince the triers of fact. There is ample evidence on which the jury could base a reasonable conclusion that: (1) plaintiffs failed to prove causation in fact; or (2) Dr. Comeaux was not negligent.
"Ours is not the primary duty of weighing the evidence, judging the credibility of witnesses or evaluating the strength of the various experts' opinions. On the contrary, these tasks are allotted initially to the triers of fact, here the jury; and the conclusions of the jury as to facts should not be disturbed unless manifestly erroneous. See Hooper v. Wilkinson, 252 So.2d 137 (La.App. 3 Cir. 1971); and Busby v. St. Paul Fire & Marine Insurance Company, 290 So.2d 701 (La.App. 1 Cir. 1974); writ denied, La., 294 So.2d 546. The intermediate appellate court is to examine the record and to review the facts to determine whether there is a reasonable evidentiary basis for the decision by the triers of fact. Dunlap v. Armendariz, 265 So.2d 352 (La.App. 4 Cir. 1972)." Wiley v. Travelers Insurance Company, 300 So.2d 555, at 558 (La.App. 3 Cir. 1974); writ denied, 303 So.2d 187.
For these reasons, I would affirm the verdict but on different grounds. Therefore, I respectfully concur.
NOTES
[1] Although plaintiffs attempted to prove that the sponge was left in Mrs. Druilhet's uterus or womb, rather than the vaginal tract, the expert testimony at trial clearly indicated that such was essentially an impossibility and that if it had occurred plaintiff-wife would have likely sustained internal infection or other complications.
[2] See Trahan v. Odell Vinson Oil Field Contractors, Inc., 295 So.2d 224 (La.App.3rd Cir. 1974). Contra, however, is the fact that the record is unclear as to the extent plaintiff wanted to pursue his inquiry. Additionally, broad discretion rests in the trial judge as to the scope and extent of voir dire. His rulings are not to be disturbed absent a clear abuse of discretion.