SWIFT, Judge.
On December 22, 1978, a vehicle owned by Dianne Barras Jacobs and driven by her sixteen year old minor son, Milton T. Jacobs, collided with the rear of Louis Prince’s automobile.
Prince sued Milton T. Jacobs, Dianne Jacobs and State Farm Mutual Automobile Insurance Company (State Farm), for damages. Mrs. Jacobs died before the trial and her brother, Michael A. Barras, was appointed executor of her succession and substituted as a defendant. An attorney was appointed to represent the minor.
In accordance with a stipulation of counsel the question of liability was submitted to the trial judge for decision and the amount of plaintiff’s damages was determined by an eight person jury. The judge ruled in favor of the plaintiff on liability issue. The jury rendered a verdict of $66,-000.00 as the damages sustained by plaintiff over and above his property damages. The amount of the latter was stipulated.
Both plaintiff and defendant were covered by insurance policies issued by State Farm. Prior to trial State Farm paid plaintiff $25,000.00 as its maximum bodily injury liability limit under the policy issued to Dianne Jacobs, $1,083.00 for the agreed property damages, legal interest on the two sums and the court costs then incurred. After these payments were made the trial judge dismissed State Farm from the suit as the liability insurer of the Jacobs, reserving plaintiff’s rights under the policy issued to him.
State Farm paid Prince, $5,000.00 under his policy as the maximum medical payments coverage per person. This policy also contained uninsured-underinsured motorist coverage with a limit of $50,000.00 for each person.
As the jury award of $66,000.00 was less than the insurer’s total bodily injury liability limit of $75,000.00 under both policies, the trial judge, citing Roberie v. State Farm Mutual Automobile Insurance Company, 291 So.2d 923 (La.App. 3 Cir. 1974), writ refused, 294 So.2d 830 (La.1974), and *299 Taylor v. State Farm Mutual Automobile Insurance Company, 237 So.2d 690 (La.App. 4 Cir. 1970), credited State Farm with the $5,000.00 it paid plaintiff under the medical payments provisions of his policy. State Farm was also credited on the total $66,-000.00 award with the $25,000.00 it paid to plaintiff under the Jacobs’ policy.
The plaintiff has appealed the judgment of the trial court, alleging three specifications of error.
The first is that the jury abused its discretion when it awarded plaintiff, a machinist, only $66,000.00 for general and special damages, because the evidence reflects that plaintiff’s special damages of medical expenses and lost wages exceeded this amount.
We do not agree.
Only one treating physician testified at trial. Dr. Robert Rivet, a neurosurgeon, said that he first saw the plaintiff for complaints from this accident on February 7, 1979. Prince had received conservative treatment from another doctor before seeing Dr. Rivet. This included pain medication, muscle relaxants and heat treatments, but they afforded plaintiff no relief. Prince complained to Dr. Rivet of pain in the neck and discomfort in the left shoulder and left upper extremities. The doctor determined that plaintiff had a spasm or a tightness of the left neck muscle which indicated an injury to the neck.
No fractures or malalignment of the cervical vertebrae were noted in the x-rays. However, a myelogram was performed and Dr. Rivet decided that Prince had multiple abnormalities at four disc spaces. More therapy was performed, again with no benefit.
On March 1, 1979, Dr. Rivet performed surgery on Prince, an antereocerv-ical inter-body fusion, involving C 5-6 and C 6-7. He was discharged from the hospital ten days later. Thereafter, the doctor saw plaintiff periodically in 1979 and into 1980. One month prior to trial on April 17 and 18, 1980, Dr. Rivet suggested additional surgery which Prince declined. The physician testified that if Prince had the additional surgery he would be disabled by 15%. Otherwise, he would continue to suffer a 20% disability. Without another operation the doctor did not think plaintiff could resume his employment which involved some heavy activity. With successful surgery he thought that within six to eight months Prince could do any type of work that did not require heavy lifting or peculiar body positions.
The cost of the first operation and plaintiff’s other medical expenses amounted to $8,095.51. The estimated cost of a second operation with doctor’s fees and rehabilitation expenses was between $5,000.00 and $8,000.00. Thus, the evidence indicates past and future medical expenses of approximately $13,000.00 to $16,000.00 if the second operation is performed.
Dr. Rivet further testified he had treated Prince in 1969 after a 1968 automobile accident for injuries similar to those for which he was seen in 1979 and 1980 following the subject accident. There was a narrowing of his C 5-6 interspace then with a degenerative arthritis process going on in his neck that the plaintiff had managed to live with up to the 1978 accident. Thus, the jury was faced with the issue of whether or not all of Prince’s symptoms and the medical expense claimed were caused by the subject accident.
As for the plaintiff’s claim for lost wages, his income tax returns reflect that while he was employed as a machinist with LOR, Incorporated, his maximum annual income was $21,241.00 which he earned in 1978. For the five year period before the accident his average annual income was approximately $15,500.00. Although Prince did not work for the sixteen months between the accident and the trial, the jury had to decide if and when he was to resume gainful employment and how long he might continue therein with or without the second operation.
Pursuant to a stipulation the jury was instructed by the court to determine the total amount of the plaintiff’s damages, exclusive of property damages, without re *300 gard to the prior payments. Presumably, it did so in spite of being given the insurance policies involved for examination. While the total award for both general and special damages for the plaintiff’s neck injuries may seem low, we are unable to say that it constituted an abuse of the much discretion accorded the trier of fact in determining quantum. La.C.C. Art. 1934(3); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
Appellant’s second specification, somewhat related to the first, is that the trial judge erred in instructing the jury concerning the law applicable to the amount payable under the UM coverage of the policy issued to Mr. Prince. He contends that the jury apparently fell into error in an attempt to determine this amount in its consideration of the ability of the two Jacobs to pay an award and as a consequence the verdict is much less than it should have been.
We, of course, cannot speculate as to just how the jury arrived at the amount of plaintiff’s damages. Nor is it necessary for us to determine whether the trial judge erred in this regard, because the record does not show that counsel for appellant entered any objection to the jury charge or to the procedure that was followed. A party may not complain of an erroneous jury instruction or of the failure to give an instruction without his having entered in the record an objection in this respect and his grounds therefor. La.Code of Civil Procedure Article 1793, Druilhet v. Comeaux, 317 So.2d 270 (La.App. 3 Cir. 1975), writ denied, 321 So.2d 363 (La.1975); Helaire v. Liberty Mutual Insurance Company, 397 So.2d 8 (La.App. 3 Cir. 1981).
We were informed by counsel for both parties at oral argument that appellant’s third specification of error is now moot. Although the judgment awarded plaintiff interest on the award from an incorrect date, the defendant properly paid the interest from the correct date of judicial demand.
For the foregoing reasons the judgment of the district court is affirmed at appellant’s costs.
AFFIRMED.