471 So.2d 1111 (1985)
David DUERDEN, Plaintiff-Appellant,
v.
PBR OFFSHORE MARINE CORPORATION, et al., Defendant-Appellee.
No. 84-525.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1985.
*1112 Jones, Jones and Alexander, Jennifer Jones Bercier, Cameron, for plaintiff-appellant.
Burke and Mayer, William B. Schwartz, New Orleans, for defendants-appellees.
Before FORET, LABORDE and YELVERTON, JJ.
FORET, Judge.
The plaintiff, David Duerden, filed suit against PBR Offshore Marine Corp. (PBR), The Superior Oil Company, and their insurers, American Centennial Insurance Company; National Union Fire Insurance Company of Pittsburg, Pennsylvania; Insurance Company of North America; United States Fire Insurance Company; and Ennia, for damages, maintenance and cure, and punitive damages for failure to timely pay maintenance and cure and for failing to correct the unseaworthy condition of the vessels that plaintiff was injured on. After trial on the merits, the jury awarded plaintiff maintenance and cure in the amount of $20.00 per day from October 19, 1982, until the point of maximum cure, but found in favor of the defendants, rejecting the plaintiff's claim of negligence and unseaworthiness. The plaintiff has appealed the judgment of the trial court.
The issues presented in this appeal are that:
(1) The trial court committed reversible error in giving an instruction which was an improper comment on the evidence, and further compounded such error by overemphasizing another aspect of a requested defense charge in an attempt to correct its original error.
(2) The trial judge committed reversible error in allowing defense counsel, following timely objection by plaintiff, to use the Golden Rule Argument in closing statements.
(3) The trial judge erred in restricting plaintiff's examination of expert witnesses.
(4) The verdict is contrary to the law and the evidence.
We affirm the judgment of the trial court.

FACTS
On or about August 16, 1982, plaintiff was injured while in the employ of PBR as an engineer aboard the crewboat M/V PBR 115, owned by PBR and under charter to Superior. Plaintiff had finished cleaning the lazaret area of the crewboat while it was moored at the Superior docks in Cameron, had re-entered the area while the floor was still wet, and fell, striking his lower back on a rudder post located in the lazaret. Plaintiff reported the incident to the captain sometime later, but did not leave the boat until August 20. On August 23, plaintiff consulted Dr. Melvin Bourgeois who, after x-raying plaintiff's back, informed him that he had a congenital and/or developmental condition of his lower back known as spondylolisthesis. Plaintiff was released to return to light duty, but instead chose to take some time off to go to New York to join his wife.
Plaintiff returned to Louisiana approximately one month later and contacted PBR at that time about returning to work. He was assigned to the M/V PBR 161 in October. Prior to returning to the boat, plaintiff was seen by the company physician, Dr. Cecil Clark, who found the plaintiff's condition asymptomatic at the time and released him to return to work. On October 14, 1982, while the PBR 161 was being *1113 docked in Cameron, plaintiff strained his back while working the mooring lines. Plaintiff was hospitalized for this injury until October 19, 1982. He was released to return to light duty work some weeks later, but never returned to work for PBR. This lawsuit was subsequently filed.

ASSIGNMENT OF ERROR NO. 1
The plaintiff complains that the trial court gave an improper instruction to the jury and, after objection, repeated the charge in an attempt to correct the error. The complained of charge was:
"A seaman is not entitled to a deck which is not slippery when wet."
After plaintiff objected and a discussion was had regarding how it should be corrected, the trial court gave the following supplemental charge:
"THE COURT: Now, ladies and gentlemen, in my first reading of instructions to you I gave this sentence; a seaman is not entitled to a deck that is not slippery when wet. I'm going to substitute instead of that sentence I'm going to substitute these sentences. A seaman is expected to cope with risks that are inherent to life on the sea, even on seaworthy vessels. The law places a duty on employers to provide its employees with a reasonably safe place to work; however, employers are not required to furnish the safest possible place to work but one that is reasonably safe."
While the trial court did not instruct the jury to disregard the first charge, we believe that the supplemental charge as given was an adequate correction and sufficient to inform the jury that the first instruction was to be disregarded.
In addition, our review of the record indicates that plaintiff did not object to the supplemental charge as given even after the trial court asked both counsel if they had any objection to the supplemental instructions given. LSA-C.C.P. Art. 1793 governs this situation. That article reads:
"A. At the close of the evidence, or at such earlier time as the court reasonably directs, a party may file written requests that the court instruct the jury on the law as set forth in the requests.
B. The court shall inform the parties of its proposed action on the written requests and shall also inform the parties of the instructions it intends to give to the jury at the close of the evidence within a reasonable time prior to their arguments to the jury.
C. A party may not assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."
In the absence of an objection to the supplemental instruction as given, the plaintiff may not now assign this as error in the Court of Appeal. Robillard v. P & R Racetracks, Inc., 405 So.2d 1203 (La. App. 1 Cir.1981). In Bourque v. Olin Corp., 346 So.2d 1373 (La.App. 3 Cir.1977), we said:
"Failure to timely object to the jury charge waives the right to urge on appeal errors in the charge as grounds for reversal and remand. Druilhet v. Comeaux, 317 So.2d 270 (La.App. 3rd Cir. 1975) (writ denied, La., 321 So.2d 363); Renz v. Texas & Pacific Railway Company, 138 So.2d 114 (La.App. 3rd Cir. 1962), writ denied. Likewise, the right to attack on appeal an allegedly improper instruction given after the case has been submitted to the jury must be preserved by an objection made at the time the supplemental instruction is given. See Renz v. Texas & Pacific Railway Company, supra. The policy considerations underlying these rules are obvious. As Judge Tate stated in Renz, `Counsel may not permit or acquiesce in an easily corrected procedural error and then, after an adverse verdict, urge such error for the first time as a ground for setting aside the jury verdict reached by the *1114 expensive and cumbersome method of a jury trial.'"
For that reason and, additionally, because we feel the trial court's supplemental charge sufficiently corrected any error committed in giving the first charge, we find no merit to the plaintiff's first assignment of error.

ASSIGNMENT OF ERROR NO. 2
Plaintiff assigns as error, defense counsel's use of the "Golden Rule Argument" over plaintiff's objection. The objectionable part of defendant's argument was as follows:
"... Common sense tells you, ladies and gentlemen, that if a floor is wet and you just finished soaking it down you don't sit there and go back in there. You wait until it dries. And he didn't do that. And if that's not contributory negligence I don't know what is. I put the water there; I slip and fall in it. If somebody does that on your property, they put something slippery and they slip and fall in it, do you become automatically responsible just because they did something wrong? No. The court is going to look to ..."
As the Court in Burrage v. Harrell, 537 F.2d 837 (5th Cir.1976) said:
"Appellant asserts that the trial court erred in overruling her objection to appellee's alleged `golden rule' closing argument. Appellant's reliance on the `golden rule' cases is misplaced: they deal with arguments in which the jury is exhorted to place itself in a party's shoes with respect to damages. See, e.g., Skaggs v. J.H. Rose Truck Line, Inc., 435 F.2d 695 (5th Cir.1970); Har-Pen Truck Lines, Inc. v. Mills, 378 F.2d 705, 714 (5th Cir.1967). The rationale for prohibiting such an argument is that the jury's sympathy will be unfairly aroused, resulting in a disproportionate award of damages, e.g., id.; Baron Tube Co. v. Transport Insurance Co., 365 F.2d 858, 862 (5th Cir.1966)."
Here, as in Burrage, the defense counsel's arguments were directed to the reasonableness of some action taken by the plaintiff rather than directed to the issue of damages. We find no prejudicial error in the defendants' use of a "golden rule argument" in the context within which it was used. We therefore find that the plaintiff's second assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
Plaintiff assigns as error the trial court's restricting plaintiff's examination of certain expert witnesses, namely Robert Owen, Sr. and Dr. Cecil Clark.
Mr. Owen was called by the plaintiff to give testimony as an expert in the field of safety as it relates to personnel, practices, procedures, and equipment of the work place. He had worked with companies having vessels which came under Coast Guard regulations, but was himself not 100% familiar with all Coast Guard regulations. Mr. Owen said that he did not hold himself out as an expert in Coast Guard regulations. When asked by defense counsel what governmental agency applied its regulations to vessels, plaintiff's counsel objected, wanting to know what that had to do with whether or not he was a safety expert. Yet several questions later, plaintiff's counsel posed this question,
"Mr. Owen, are you aware of any Coast Guard regulations regarding manning requirements of the vessel of the size and tonnage of the PBR 161?"
Defense counsel objected, and the trial court sustained the objection.
"It is fundamental that a trial judge be allowed much discretion in determining a witness's qualifications and competence to testify as an expert. See Ashley v. Nissan Motor Corp. in USA, 321 So.2d 868 (La.App. 1st Cir.1975) and cases cited therein. A reviewing court will not disturb a trial judge's ruling unless the error is clear and involves a misconception of the law." Sledge v. Aluminum Specialties Mftg., Inc. 351 So.2d 835 (La. App. 1 Cir.1977).
We find no error in this ruling.
*1115 Plaintiff next complains that Dr. Cecil Clark should have been allowed to testify in answer to the following hypothetical question, based on facts already in evidence,
"Q. I'm going to ask you to make an assumption again. If you assume that someone was swinging on a swing rope and hit his back and then he got up and he swam for an hour, would you feel that it was likely that this spondylolisthesis became symptomatic at that time?"
Defense counsel objected, and the trial court sustained the objection. While we believe that the trial court was in error in not allowing Dr. Clark to answer this question, in light of our ultimate conclusion that plaintiff failed to prove the unseaworthiness of the vessels and negligence on PBR's part, we find that the error was harmless and no reversal or remand is required. See Ardoin v. Travelers Insurance Co., 229 So.2d 426 (La.App. 3 Cir. 1969).
Therefore, we find plaintiff's third assignment of error to be without merit.

ASSIGNMENT OF ERROR NO. 4
Plaintiff asserts in his last assignment of error that the jury verdict was contrary to the law and evidence presented.
The allegations set forth by the plaintiff in this suit were that (1) the defendant was negligent in failing to provide a non-skid floor in the lazaret area of the M/V PBR 115, which was slippery due to the leaking rudder posts and the presence of oil on the floor, and (2) the M/V PBR 161 was unseaworthy due to PBR's failure to provide an adequate complement of crew in violation of Coast Guard regulations.
Plaintiff testified that the floor of the lazaret was always wet and, that on the day of his accident aboard the M/V 115, it was wetter than usual because he had just finished washing it down with soap and water. After he had taken the hose out of the room, he returned, for apparently no reason, slipped on the wet floor, and hit his back on the rudder post.
Captain Burden, who was the master on the ship until August 14, two days before plaintiff's accident, testified that the rudder posts were, in fact, designed to leak to a certain extent for lubrication, and he didn't think they were leaking excessively. He testified that the rudder stocks were above the water line and usually wouldn't leak while docked except if the boat was loaded heavily. When asked about the lack of a metal "diamond plate" flooring or some other non-skid flooring as opposed to the sheet aluminum floor of the lazaret, he testified that he didn't think the lack of a "diamond plate" floor made the 115 unfit for duty.
Arthur Sargent, an expert naval architect and marine engineer, testified that a crewboat such as the 115 had to be inspected by the Coast Guard prior to its construction, during and after construction, and that non-skid surfaces were not required nor were they normally applied on interior decks. He said that a "diamond plate" floor that was wet or greasy or worn will be just as slippery as sheet aluminum. Mr. Sargent reviewed the plans of the ship submitted by the builder and testified that, according to its design, the rudder posts were above the water line even at maximum load.
Captain Ford, who relieved Captain Burden on the 115, testified that he was not aware of any leaking rudder posts.
Plaintiff alleged that his second accident on the 14th of October was a result of PBR's violation of Coast Guard manning requirements. The 161 is a Coast Guard-certified vessel, as is the 115, and it must be manned according to its certificate of inspection. That certificate requires that when it is operated in excess of twelve hours in a twenty-four hour period, that it have a four-man crew of two ocean operators, an engineer and deckhand, and, if operating less than twelve hours, it must have a three-man crew of two ocean operators and an engineer/deckhand. The Captain's logs for October 13 and 14 show that the 161 was away from the docks at Cameron for only three hours each day, and *1116 there were three men manning the vessel. At the time of plaintiff's accident aboard the 161, Captain Burden had gone ashore to take care of paperwork and left the second captain and plaintiff to moor the vessel. Captain Burden testified that this was an adequate number of crewmen to perform the mooring job.
John Monday, an expert in Coast Guard regulations who contributed to the drafting of the present Coast Guard regulations, said that the 161 had the correct complement of crew on the 14th of October under its certificate of inspection, but went on to add that the 161 and other boats like it were subject to the Coast Guard regulations only if they carried more than six passengers, otherwise they need not comply with their certificates of inspection. The Captain's logs showed that the 161 transported only two passengers that day.
The jury in this case heard twelve live witnesses and heard the depositions of three witnesses read aloud in court. Of those witnesses, nine presented expert testimony concerning the plaintiff's injuries and damages and the design and operation of vessels such as the 115 and 161. There was a great deal of complicated testimony presented to the jury, whose duty it was to assign weight and credibility to all, part, or none of it. In Guidry v. Davis, 382 So.2d 250, (La.App. 3 Cir.1980), the Court said, at page 253:
"It is also well settled that the jury or trial judge may, and should, assess the credibility of experts who testify at the trial, as well as that of lay witnesses, to determine the most credible and realistic evidence and the fact finder's determination of the credibility of those witnesses will not be disturbed unless found to be clearly erroneous." (Cites omitted.)
The jury failed to find negligence on the part of PBR or that either vessel was unseaworthy.
"Negligence is the failure to exercise the degree of care which an ordinary prudent person would use under the circumstances in discharging the duty that he owes to those who work on a vessel. The shipowner has a continuing duty to provide a reasonably safe place to work and to use ordinary care to maintain the vessel in a reasonably safe condition .... The mere fact that an injury occurred does not give rise to a Jones Act claim. Evidence must be presented which indicates negligence on the part of the shipowner or his employees to justify the award. [Citations omitted.]
"... The law is well settled that a shipowner has an absolute duty to provide a seaworthy vessel. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960) has established the following basic concept:
`[T]he owner is [not] obligated to furnish an accident-free ship. The duty is absolute, but it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service.'

Mitchell at 362 U.S. 550, 80 S.Ct. 933.
The vessel need not be accident proof." Clements v. Chotin Transp., Inc., 496 F.Supp. 163 (M.D.La.1980).
We conclude, as did the jury, that the plaintiff failed to prove negligence on PBR's part in either accident or the unseaworthiness of the M/V PBR 115 and 161.
We find no error in the findings of the jury and the judgment of the trial court.
Accordingly, the judgment of the trial court awarding the plaintiff, David Duerden, maintenance and cure in the amount of $20 per day beginning October 19, 1982, until plaintiff reaches a point of maximum cure, with credit given PBR, and dismissing the plaintiff's remaining demands is hereby affirmed.
*1117 All costs are to be borne by plaintiff-appellant.
AFFIRMED.